FILED

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

DEC 2 2 2025

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

**Scott Bruno**

6352 Enramada Dr.

La Grange, CA 95329

Phone: (408) 417-7205

Email: caliwebman@gmail.com

1:25-cv-1967 BAM

Plaintiff, Pro Se

v.

**County of Tuolumne;**

**Tuolumne County Sheriff's Office;**

**Sheriff David Vasquez;**

**Deputy Sorini;**

**Deputy Rawlinson;**

**Deputy Logan;**

**Deputy Atkinson;**

**and DOES 1–20,**

Defendants.

Case No.: _____

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

(42 U.S.C. § 1983; ADA Title II; State-Law Claims)

JURY TRIAL DEMANDED

---

## I. INTRODUCTION

1. This civil-rights action arises from a pattern of unconstitutional, malicious, and retaliatory conduct committed by members of the Tuolumne County Sheriff's Office ("TCSO") against Plaintiff **Scott Bruno**, a disabled citizen who initially contacted the Sheriff's Office seeking assistance as a *victim* in a civil matter.

2. Instead of receiving lawful assistance, Plaintiff was subjected to a narcotics raid without cause, unlawful seizure of property outside the scope of the warrant, fabricated criminal accusations, two wrongful arrests with zero probable cause, coercive informant-recruitment attempts, ADA violations, defamatory publication of false criminal allegations, and prolonged unlawful retention of Plaintiff's property.

3. Both arrests were **rejected by the District Attorney**, confirming that Defendants lacked probable cause and acted outside the bounds of lawful police conduct.

4. Deputies also attempted to coerce Plaintiff into becoming an informant for the "TNT" (Tuolumne Narcotics Team), turning off body cameras and pressuring him to tell a judge he wished to "join TNT," providing him with a handwritten note to use in court for that

purpose.

5. Defendants seized more than **35 guitars**, studio equipment, electronics, tools, and personal items. These items were not listed in the warrant, bore no connection to criminal activity, and were unlawfully retained despite Plaintiff's repeated demands for return.

6. Defendants issued defamatory public statements accusing Plaintiff of being "the biggest fentanyl dealer in the county" even though no fentanyl was found and no charges were ever filed.

7. Plaintiff suffers from PTSD and disability-related conditions for which playing guitar is medically documented as his primary therapeutic modality. Defendants deprived Plaintiff of access to these therapeutic tools, violating the ADA.

8. Through this action, Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, return of property, and accountability for the violations of his constitutional and statutory rights.

---

## II. JURISDICTION

9. This action arises under the United States Constitution and federal law, including 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act.

10. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

11. This Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.

---

## III. VENUE

12. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because all events occurred in Tuolumne County, which is within the Eastern District of California – Fresno Division.

---

## IV. PARTIES

Plaintiff

13. Plaintiff **Scott Bruno** is an individual residing in La Grange, California. Plaintiff is disabled and suffers from PTSD, for which guitar playing is his primary therapeutic

modality.

## Municipal Defendants

14. **County of Tuolumne** is a local governmental entity responsible for the policies, practices, supervision, training, and conduct of its Sheriff's Office.

15. **Tuolumne County Sheriff's Office** ("TCSO") is a department of the County and acted under color of state law at all relevant times.

## Individual Defendants

16. **Sheriff David Vasquez**, at all times relevant, was the final policymaker for TCSO, responsible for supervising deputies, enforcing constitutional compliance, training, discipline, disseminating public statements, and maintaining departmental policies.

17. **Deputy Sorini** acted under color of law and personally participated in or directed unlawful arrests, searches, seizures, coercive conduct, and unlawful retention of Plaintiff's property.

18. **Deputy Rawlinson** acted under color of law and personally participated in or failed to prevent the violations described herein.

19. **Deputy Logan** acted under color of law and participated in the events described, including the unlawful seizure of property and misconduct during arrest operations.

20. **Deputy Atkinson** acted under color of law and participated in unlawful searches, seizures, or failed to intervene.

21. **DOES 1–20** are unidentified deputies, supervisors, or agents of the County who participated in or failed to prevent constitutional violations.

**END OF PART 1**

**PART 2 — FACTUAL ALLEGATIONS (FULL EXPANDED VERSION)**

## V. FACTUAL ALLEGATIONS

22. The following events occurred in Tuolumne County, California, and all acts were taken by Defendants acting under color of state law. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

---

A. Plaintiff First Contacted the Sheriff's Office as a Victim Seeking Help

23. Plaintiff initially contacted the Tuolumne County Sheriff's Office ("TCSO") to request lawful assistance with a civil matter involving a roommate who refused to vacate the residence.

24. Plaintiff was the *victim* and *reporting party* in this matter.

25. 25. Plaintiff contacted the Tuolumne County Sheriff's Office as a victim seeking assistance regarding a household dispute. Plaintiff did not request, receive, or become subject to any restraining order of any kind. Any temporary restraining order issued by the court was directed solely at the other party, not Plaintiff, and was quashed without prejudice after the court heard from Plaintiff directly. Despite Plaintiff being the initial reporting party and having no restraining order against him, deputies escalated the situation and treated Plaintiff as a suspect rather than a victim, leading directly to his

7

wrongful arrest and ensuing constitutional violations.

26. Despite Plaintiff's lawful request for assistance, deputies began treating Plaintiff as a suspect rather than a victim, escalating what should have been a civil matter.

27. Deputies displayed hostility, dismissiveness, and an unexplained adversarial posture toward Plaintiff, setting the stage for the unlawful actions that followed.

B. May 2, 2025 — Narcotics Warrant Executed Without Basis

28. On or about **May 2, 2025**, deputies executed a narcotics-only search warrant at Plaintiff's home.

29. Plaintiff has never used, grown, sold, trafficked, or possessed narcotics of any type.

30. Deputies did not find any narcotics belonging to Plaintiff. The only pills discovered at the residence were lawfully possessed by the other party, and deputies later planted approximately 33 grams of fentanyl on her—charges which were ultimately dropped. There was no evidence whatsoever linking Plaintiff to narcotics use, possession, or distribution.

31. Despite this, deputies acted aggressively and treated Plaintiff as if he were a significant narcotics suspect without any factual basis.

32. Deputies made statements indicating they believed Plaintiff was "the biggest fentanyl dealer in the county."

33. This was a **fabrication**, devoid of evidence, and maliciously aimed at justifying the overbroad and unconstitutional actions taken by TCSO personnel.

---

C. Deputies Seize Over 35 Guitars and Personal Property With No Legal Basis

34. During the May 2 search, deputies seized:

a. More than **35 guitars**

b. Guitar cases and bags

c. Studio recording equipment

d. Pedals, processors, amplifiers

e. Electronics

f. Tools

g. Clothing

h. A safe with personal and sentimental items

35. NONE of these items were listed in the warrant, related to narcotics, or connected to criminal activity.

36. Plaintiff repeatedly informed deputies the property was unrelated to any alleged crime.

37. Deputies ignored Plaintiff and continued seizing high-value items.

38. These items were taken despite Plaintiff's immediate protests and despite deputies knowing they had no legal basis to confiscate them.

39. Plaintiff's guitars are not merely property—they are essential **ADA therapeutic tools** for his PTSD treatment.

40. Deputies showed reckless disregard by seizing these items in violation of Plaintiff's constitutional and disability rights.

D. Deputies Fabricate Statements and Spread False Information

41. Throughout the search, deputies repeated false statements alleging Plaintiff was involved in fentanyl trafficking.

42. At no time did deputies locate fentanyl, precursors, packaging materials, or any evidence of narcotics activity.

43. Deputies' false narrative was later amplified when the Sheriff's Office issued a **public Facebook press release** portraying Plaintiff as linked to narcotics offenses.

44. These public statements were false, defamatory, and designed to shift blame, justify misconduct, and harm Plaintiff's reputation.

45. Plaintiff lives in a small rural community where social media posts from law enforcement agencies spread quickly and carry significant impact.

46. After the press release, Plaintiff experienced public shaming, reputation loss, and emotional distress when community members viewed him differently and treated him as a dangerous criminal.

E. Wrongful Arrest #1 – Fabricated Domestic Violence Allegation

47. Later on May 2, 2025, deputies arrested Plaintiff for alleged domestic violence.

48. Deputies relied on a **year-old photograph** of a prior accidental injury, falsely representing it as a recent injury caused by Plaintiff.

49. The plaintiff was not involved in any domestic violence. Deputies relied on a year-old accidental bruise photograph submitted by the other party and falsely portrayed it as recent, despite knowing that no restraining order or protective order had ever been issued against Plaintiff. Deputies ignored exculpatory information and misrepresented facts in order to justify an unlawful arrest.

50. During Plaintiff's arrest, Deputy Sorini falsely stated to Plaintiff, "you are the biggest fentanyl dealer in the county," despite possessing no evidence to support such an accusation. This malicious and fabricated statement contributed to Plaintiff's unlawful arrest, emotional distress, and reputational harm..

51. The District Attorney rejected the case immediately, confirming that Plaintiff's arrest was baseless and unsupported by evidence. Following the sheriff's false statements and misleading public narrative, members of the local community began treating Plaintiff as a criminal, including employees and customers at local establishments. Plaintiff experienced reputational harm, humiliation, and emotional distress as a direct result of the Sheriff's Office's misrepresentations.

52. During the second arrest event, deputies stated their body-worn cameras were turned off during critical portions of the encounter, in violation of department policy and constitutional standards. In contrast, during the first arrest, Plaintiff was transported by a female deputy who treated him professionally and did not engage in misconduct. The deliberate failure to record the second arrest impaired Plaintiff's ability to obtain

evidence, contributed to fabrication of the narrative used against him, and intensified Plaintiff's emotional distress, humiliation, and fear resulting from the wrongful arrest.

---

F. Wrongful Arrest #2 – Pretextual Vehicle Stop Near Plaintiff's Driveway

53. Approximately one week later, deputies again targeted Plaintiff without probable cause.

54. During or immediately after Plaintiff's booking in the second arrest event, deputies transferred multiple criminal charges that originally belonged to the other party directly onto Plaintiff, despite knowing Plaintiff had no involvement in those alleged offenses. On information and belief, this charge reassignment occurred inside the jail booking process and was intended to manufacture probable cause where none existed. Following the incident, all charges against the other party were dropped, and the temporary restraining order issued against her was quashed without prejudice. This conduct further demonstrates the absence of any legitimate basis for the deputies' actions or their portrayal of events against Plaintiff.

55. Deputies removed Plaintiff from his vehicle and placed him under arrest, again lacking probable cause or justification.

56. During this encounter, deputies ordered Plaintiff out of his Corvette and took custody of the vehicle.

57. Plaintiff asked Deputy Sorini to carefully drive the vehicle down his driveway, which Sorini did.

58. During Sorini's handling of the vehicle, deputies manipulated interior compartments, and personal property Plaintiff stored in the center console later went **missing**.

59. Plaintiff was again booked and processed, causing emotional trauma, fear, and humiliation.

60. The District Attorney again **rejected all charges**, confirming the arrest's unlawfulness.

G. Deputies Turn Off Body Cameras and Attempt to Coerce Plaintiff Into TNT Informant Work

61. During the second arrest event, deputies explicitly stated their body-worn cameras were turned off during critical events and interactions, in violation of established policy. In contrast, the first arrest involved no such misconduct, and Plaintiff was transported by a female deputy who treated him professionally.

62. Deputy Sorini and others attempted to recruit Plaintiff into becoming an informant for the "TNT" (Tuolumne Narcotics Team).

63. Deputies told Plaintiff to tell the judge he wanted to "join TNT."

64. After Plaintiff had been booked and while he was at the nurses' station, Deputy Sorini handed Plaintiff a handwritten note instructing him on how to join the TNT task force. This occurred without counsel present and constituted a direct attempt to recruit or coerce Plaintiff into cooperating while he was in custody and vulnerable.

65. Deputies warned Plaintiff not to get caught with the note in jail.

66. Plaintiff refused to participate in any improper or coerced arrangement.

67. Deputies' coercive conduct contributed to the wrongful arrests and retaliatory actions.

H. Sheriff's Office Public Defamation and Community Harm

68. After seizing Plaintiff's property and arresting him twice, TCSO published a Facebook press release implying Plaintiff was involved in narcotics trafficking.

69. The post contained false statements or misleading insinuations, damaging Plaintiff's public reputation.

70. Community members who saw the post began speaking negatively about Plaintiff.

71. Local businesses treated Plaintiff differently, including a local store where employees looked at Plaintiff with suspicion or contempt.

72. Plaintiff suffered significant emotional and reputational damage in a small-town environment where such posts spread rapidly.

---

I. ADA Violations — Deprivation of Therapeutic Accommodations

73. Plaintiff suffers from war-time PTSD and related service-connected disabilities that substantially limit major life activities. These disabilities were known or should have been known to the deputies involved, and Plaintiff's symptoms were exacerbated by the deputies' conduct during both arrest events

74. Plaintiff's medically supported therapeutic modality is **playing guitar**, which helps regulate symptoms and maintain functional stability.

75. Deputies seized his guitars and refused to return them, knowing their importance to his disability management.

76. Deputies failed to provide ADA accommodations during arrest, transport, and detention.

77. The County has no established ADA procedures for assisting disabled detainees.

78. These failures caused a severe increase in Plaintiff's symptoms, physical stress, and psychological harm.

## J. Unlawful Retention of Property After Charges Were Rejected

79. After both arrests were rejected, Defendants were obligated to return **all** of Plaintiff's property.

80. Plaintiff made multiple demands for return.

81. Deputies refused, ignored, or delayed returning property.

82. Defendants had **zero lawful justification** for continued retention.

83. Their conduct violates clearly established Ninth Circuit law, including *Brewster v. Beck* (2017).

84. Plaintiff continues to be deprived of valuable property, including essential therapeutic tools.

## K. Pattern of Misconduct Demonstrates Unconstitutional Policies

85. The actions of deputies were not isolated mistakes—they reflect systemic problems within TCSO.

86. Deputies turned off cameras, fabricated statements, conducted coercive informant tactics, carried out arrests without probable cause, failed to provide ADA accommodations, and withheld property without justification.

87. Sheriff Vasquez, as policymaker, is responsible for supervising, training, and preventing such misconduct.

88. These practices constitute a de facto policy, custom, or pattern in violation of Plaintiff's constitutional rights.

**END OF PART 2**

## PART 3 — CAUSES OF ACTION (FULL, EXPANDED, 16 COUNTS)

Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

---

### COUNT 1 — Fourth Amendment: Unreasonable Search & Seizure

(42 U.S.C. § 1983 — Against Deputies Sorini, Rawlinson, Logan, Atkinson, and DOES 1–20)

89. Plaintiff's rights under the Fourth Amendment include freedom from unreasonable searches and seizures.

90. Defendants seized and continue to retain Plaintiff's personal property, including guitars, studio gear, tools, electronics, personal documents, and other essential items, as well as Plaintiff's Kevlar Army-issued battlefield helmet that he wore during multiple wars and countless missions. This helmet is irreplaceable military property of profound personal and historical significance, and its continued retention by Defendants constitutes an ongoing constitutional and emotional injury.

91. None of these items were contraband, derivative contraband, or evidence of a crime.

92. Deputies unlawfully expanded the scope of the warrant and exceeded its authority.

93. Defendants lacked probable cause or any legal justification for seizing Plaintiff's property.

94. Defendants' conduct was objectively unreasonable and violated clearly established law.

95. As a result, Plaintiff suffered property loss, emotional distress, and constitutional harm.

---

**COUNT 2 — Fourth Amendment: Arrest Without Probable Cause**

(42 U.S.C. § 1983 — Against Individual Deputies)

96. Plaintiff was arrested twice without probable cause.

97. The May 2, 2025 arrest was based on a fabricated domestic violence claim involving a year-old photograph misrepresented as recent injury.

98. Deputies ignored exculpatory evidence and lacked any reasonable basis to believe Plaintiff committed a crime.

99. The second arrest approximately one week later occurred after a pretextual stop with no lawful basis.

100.    Both arrests were rejected by the District Attorney, proving lack of probable cause.

101.    Plaintiff's Fourth Amendment rights were violated, causing emotional harm, humiliation, and deprivation of liberty.

---

## COUNT 3 — Fourth Amendment: Unlawful Retention of Property

(42 U.S.C. § 1983 — Against County, Sheriff's Office, and Deputies)

102.    After both arrests were rejected, Defendants had no legal reason to retain Plaintiff's property.

103.    Defendants refused to return seized guitars, electronics, and personal items despite repeated requests.

104.    The Ninth Circuit has clearly established that retention of seized property without justification violates the Fourth Amendment. *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017).

105.    Defendants knowingly violated Plaintiff's rights by withholding property.

106.    Plaintiff suffered financial loss, emotional distress, and loss of therapeutic tools.

---

## COUNT 4 — Fourteenth Amendment: Procedural Due Process

(42 U.S.C. § 1983 — Against All Defendants)

107.    Plaintiff possessed constitutionally protected property interests.

108.    Defendants deprived Plaintiff of these interests without notice, justification, hearing, or lawful procedure.

109.    Deputies fabricated evidence, misrepresented facts, withheld property, and conducted arrests without due process.

110.    Defendants' actions were arbitrary, capricious, and unconstitutional.

---

## COUNT 5 — Fourteenth Amendment: Substantive Due Process

(42 U.S.C. § 1983 — Against All Defendants)

111.    Substantive due process protects individuals from government action that is arbitrary, oppressive, or shocks the conscience.

112.    Defendants' coercive informant-recruitment efforts, fabrications, false statements, and malicious arrests constitute conscience-shocking conduct.

113.    Plaintiff suffered emotional trauma, humiliation, and deprivation of liberty.

---

## COUNT 6 — First Amendment Retaliation

(42 U.S.C. § 1983 — Against All Individual Defendants)

114.    Plaintiff exercised rights protected by the First Amendment by contacting law enforcement as a victim seeking assistance.

115.    Defendants retaliated by escalating hostility, targeting Plaintiff for arrests, and fabricating criminal allegations.

116.    Defendants' actions would chill a person of ordinary firmness from exercising First Amendment rights.

117.    Plaintiff's protected speech was a substantial factor motivating Defendants'

retaliation.

---

## COUNT 7 — First Amendment Chilling of Speech

(42 U.S.C. § 1983 — Against All Individual Defendants)

118.    Defendants' retaliatory arrests, fabrications, and defamatory publications chilled

Plaintiff's willingness to seek help, speak publicly, or engage with government actors.

119.    Defendants' conduct caused Plaintiff emotional trauma, fear, and reputational harm.

---

## COUNT 8 — ADA Title II: Failure to Accommodate

(42 U.S.C. § 12132 — Against County of Tuolumne)

120.    Plaintiff is a qualified individual with a disability (PTSD and related conditions).

121.    County employees knew or should have known of Plaintiff's disability and

therapeutic needs.

122.    Plaintiff's guitars constitute ADA-recognized therapeutic tools.

123.    Defendants failed to provide accommodations and instead seized and withheld Plaintiff's therapeutic equipment.

124.    Defendants' actions denied Plaintiff equal access to services, rights, and programs available to non-disabled detainees.

---

## COUNT 9 — ADA Title II: Disability Discrimination

(Against County of Tuolumne)

125.    Plaintiff was treated differently from non-disabled individuals due to his disability and therapeutic needs.

126.    Seizure of his therapeutic tools and denial of necessary accommodations constitute discrimination under the ADA.

127.    Plaintiff suffered significant physical and emotional distress as a result.

---

## COUNT 10 — ADA Title II: Denial of Access to Services

(Against County of Tuolumne)

128.    The County failed to provide ADA-compliant procedures during arrest, detention, and property handling.

129.    Plaintiff was denied full and equal access to law enforcement and detention services.

130.    These failures caused the deterioration of Plaintiff's mental and emotional health.

---

## COUNT 11 — Monell Liability: Failure to Train

(42 U.S.C. § 1983 — Against County of Tuolumne)

131.    The County failed to properly train deputies in:

a. probable cause standards

b. proper warrant execution

c. ADA accommodation requirements

d. property retention policies

e. avoiding fabrication and coercion

f. proper use of body cameras

132.    These systemic training failures were a moving force behind the violations.

---

**COUNT 12 — Monell Liability: Unconstitutional Policies, Customs, & Practices**

(42 U.S.C. § 1983 — Against County of Tuolumne)

133.    The Sheriff's Office maintains unlawful customs including:

a. turning off body cameras

b. coercing informant participation

c. fabricating criminal allegations

d. executing overbroad seizures

e. retaining property without cause

f. retaliating against individuals who seek help

g. publishing false and defamatory statements

134.    Sheriff Vasquez, as final policymaker, is responsible for these policies.

135.    These policies were the moving force behind Plaintiff's injuries.

---

## COUNT 13 — Negligence

(State-Law Claim — Against All Defendants)

136.    Defendants owed Plaintiff a duty of care as law enforcement officers.

137.    Defendants breached that duty by conducting unlawful arrests, searches, seizures, and

defamatory actions.

138.    Defendants' reckless and negligent conduct caused Plaintiff harm.

---

## COUNT 14 — Intentional Infliction of Emotional Distress

(Against All Individual Defendants)

139.    Defendants engaged in extreme and outrageous conduct including:

a. fabricating allegations

b. humiliating Plaintiff

c. coercing informant participation

d. issuing defamatory public statements

e. depriving Plaintiff of ADA therapeutic accommodations

140.    Defendants intended to cause or recklessly disregarded the probability of causing Plaintiff severe emotional distress.

141.    Plaintiff suffered mental anguish, fear, humiliation, and emotional injury.

---

## COUNT 15 — Defamation / Stigma-Plus

(Against Sheriff's Office & Sheriff Vasquez)

142.    The Sheriff's Office published statements implying Plaintiff was involved in fentanyl trafficking.

143.    These statements were false, unprivileged, and malicious.

144.    Defendants' publication imparted stigma and altered Plaintiff's legal status in the community.

145.    Plaintiff suffered reputational damage, economic harm, and emotional trauma.

---

## COUNT 16 — Conversion

(Against Sheriff's Office, Deputies, DOES 1–20)

146.    Defendants intentionally exercised wrongful control over Plaintiff's personal

property.

147.    Plaintiff demanded return of property; Defendants refused.

148.    Plaintiff suffered property loss, financial harm, and emotional distress.

---

**END OF PART 3**

## PART 4 — PRAYER FOR RELIEF, JURY DEMAND, SIGNATURE, EXHIBITS

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants, and award the following relief:

A. Compensatory Damages

149.    For emotional distress, humiliation, fear, reputational harm, loss of liberty, property loss, ADA-related injury, and all other damages proximately caused by Defendants' conduct, in an amount according to proof at trial.

B. Punitive Damages

150.    Against each individual defendant whose conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights, pursuant to 42 U.S.C. § 1983.

C. Injunctive Relief

151.    Ordering Defendants to:

a. Return all seized property immediately;

b. Cease unlawful retention practices;

c. Implement ADA-compliant procedures;

d. Train deputies in constitutionally required practices;

e. Prohibit coercive informant-recruitment tactics.

## D. Declaratory Relief

152.    Declaring Defendants' conduct unconstitutional, unlawful, and in violation of
Plaintiff's rights.

## E. Attorney's Fees and Costs

153.    Awarding reasonable attorney's fees and costs under 42 U.S.C. § 1988, even though
Plaintiff is pro se at this time.

## F. Any Other Relief the Court Deems Proper

154.    Including but not limited to equitable, statutory, and nominal damages.

---

## VII. JURY TRIAL DEMAND

155.    Plaintiff **demands a trial by jury** on all issues triable by a jury, pursuant to Rule 38
of the Federal Rules of Civil Procedure.

## VIII. SIGNATURE AND VERIFICATION

DATED: _12/11/2025_ 2025

**Scott Bruno**

Plaintiff, Pro Se

6352 Enramada Dr.

La Grange, CA 95329

(408) 417-7205

caliwebman@gmail.com

END OF PART 4

## IX. EXHIBIT LIST (PLACEHOLDERS)

(Attach later or leave blank—this format is correct either way)

**Exhibit A:** Tuolumne County Sheriff's Office Facebook Press Release

**Exhibit B:** Property Seizure Record / Property Receipts

**Exhibit C:** Photograph of guitars and music equipment seized

**Exhibit D:** Note provided to Plaintiff instructing him to "join TNT"

**Exhibit E:** Evidence of ADA therapeutic necessity (guitar therapy documentation)

**Exhibit F:** Correspondence or requests for property return

**Exhibit G:** Any relevant medical records or VA disability statements

**Exhibit H:** Any audio/video recordings or screenshots

(You may add or remove exhibits as they become available.)

---